Honorable Susan Brady Chair, Public Disclosure Commission P. O. Box 40908 Olympia, Washington 98504-0908
Dear Ms. Brady:
By letter previously acknowledged, your commission has asked for our opinion on several questions relating to political campaigns and loans made for political campaign expenses. We have paraphrased your questions as follows:[1]
 QUESTIONS 1. If a candidate for public office, or the authorized political committee of such a candidate, receives a loan for campaign purposes from a commercial lending institution, not guaranteed by any other person and made in the regular course of business and on the same terms ordinarily available to members of the public, is such a loan a contribution to the candidate subject to the limits set forth in RCW 42.17.640?
 2. If a candidate for public office has received a commercial loan for campaign purposes, or if the candidate's political committee has received such a loan guaranteed by the candidate, is repayment of such a loan from campaign contributions subject to the maximum allowed by RCW 42.17.125(3)?
 BRIEF ANSWERS
We answer your first question in the negative. If a candidate or political committee receives a loan from a commercial lending institution, not guaranteed by any other person, made in the regular course of business, and made on the same terms ordinarily available to members of the public, such a loan is exempt from the contribution limits set forth in RCW 42.17.640.
We answer your second question in the affirmative. RCW 42.17.125(3) limits the amount of campaign contributions which may be used to repay a loan made by the candidate to the political committee. If the candidate guarantees repayment of a commercial loan made to the committee, repayment of the loan discharges the candidate's guarantee obligation and is therefore subject to the limits set forth in RCW 42.17.125(3).
 ANALYSIS
Political campaigns have been regulated in Washington since the enactment of Initiative 276 in 1972. Laws of 1973, ch. 1, approved November 7, 1972. Since this statute was approved, primarily codified as RCW Chapter 42.17, candidates have been required to report their campaign contributions and to supply certain other information for public disclosure, and certain campaign practices have been restricted or prohibited. Your specific questions, however, derive from substantial amendments to the campaign laws enacted as part of a later initiative. Laws of 1993, ch. 2 (Initiative Measure No. 134), approved November 3, 1992. This initiative imposed new limits on the amounts political campaigns could receive and expend, imposed new limits on what candidates could do with campaign funds, and regulated such ancillary activity as loans made to political candidates or campaigns. The way in which these new provisions interrelate leads to your questions.
One primary effect of Initiative 134 was the establishment of limits on campaign contributions. RCW 42.17.640(1) provides that "[n]o person, other than a bona fide political party or a caucus political committee, may make contributions to a candidate for a state legislative office that in the aggregate exceed *five hundred dollars or to a candidate for a state office other than a state legislative office that in the aggregate exceed *one thousand dollars for each election in which the candidate is on the ballot or appears as a write-in candidate". Id.[2]
Before considering your specific questions, it is also important to set the constitutional context in which Initiative 134 was enacted. InBuckley v. Valeo, 424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976), the United States Supreme Court struck down those portions of a federal campaign regulation statute which would have limited the monetary contributions of candidates to their own campaigns, finding that such provisions unconstitutionally violated the free speech and freedom of expression rights guaranteed by the First Amendment of the United States Constitution.[3] The Court also struck down limits on any person's total contributions to more than one campaign. The Court left open the possibility of reasonable, narrowly tailored limits on a person's contribution to any single campaign. Id. State statutory limits on contributions to candidates were recently upheld in Nixon v. Shrink Mo.Gov't PAC, ___ U.S. ___, 120 S. Ct. 897, 145 L. Ed.2d 886 (2000). Thus, the initiative was enacted on the assumption that the candidate's own expenditures could not be limited, but that limitations on contributions to a specific campaign are subject to reasonable regulation.
 1. If a candidate for public office, or the authorized political committee of such a candidate, receives a loan for campaign purposes from a commercial lending institution, not guaranteed by any other person and made in the regular course of business and on the same terms ordinarily available to members of the public, is such a loan a contribution to the candidate subject to the limits set forth in RCW 42.17.640?
As we noted above, RCW 42.17.640 imposes limits on the amount any candidate may receive from any individual or other person (except political parties and caucus political committees). To avoid "loopholes" permitting persons to contribute more than the maximum amount by making contributions through other people, or in other indirect ways, Initiative 134 includes a series of sections requiring that campaign contributions be attributed to particular people for purposes of applying the limitations in RCW 42.17.640. For instance, contributions by unemancipated minor children are attributed to their parents. RCW42.17.650. A contribution by a political committee with funds that have all been contributed by one person who exercises control over the distribution of funds is attributed to the controlling person. RCW42.17.660. Contributions made through a third party but "earmarked" for a campaign are attributed to the original contributor, not to the third party. RCW 42.17.670. Employers and labor organizations are prohibited from increasing officer or employee salaries or emoluments on the understanding that political contributions will be made. RCW 42.17.680. As a general matter, a person is prohibited from making a political contribution on behalf of another unless the full identity of the actual contributor is disclosed. RCW 42.17.730.
The initiative also recognizes that contributions to campaigns may also be made in the form of loans. To that end, it provides as follows:
 (1) A loan is considered to be a contribution from the lender and any guarantor of the loan and is subject to the contribution limits of this chapter. The full amount of the loan shall be attributed to the lender and to each guarantor.
 (2) A loan to a candidate for public office or the candidate's political committee must be by written agreement.
 (3) The proceeds of a loan made to a candidate for public office:
(a) By a commercial lending institution;
(b) Made in the regular course of business; and
 (c) On the same terms ordinarily available to members of the public, are not subject to the contribution limits of this chapter.
RCW 42.17.720 (emphasis added).[4]
Your first question is based on the language in RCW 42.17.720(3) underlined just above, which creates an exception from the general rule that loans to a political candidate are subject to the contribution limits of RCW 42.17.640. The exception is for loans made by commercial lending institutions in the regular course of business and on the same terms "ordinarily available to members of the public". A loan meeting these qualifications is not, unlike most loans, treated as a contribution from the lender to the candidate and therefore subject to the limitations established in RCW 42.17.640 for such contributions.
In Interpretation 96-2, the Public Disclosure Commission (PDC) attempted to flesh out the meaning of this exemption. In doing so, the PDC interpreted the statute to imply the following points:
 (1) the loan could be made either to the candidate or to the candidate's political committee; and
 (2) to qualify for the exemption, the loan could not be guaranteed by some third party.
In our opinion, the PDC correctly inferred these conditions from the interaction of the statutes under discussion.
As to loans made directly to the candidate, the statutory language directly answers your question by making such loans exempt from the contribution limits (always assuming the conditions set forth in RCW42.17.720(3) are met). The question is whether the answer should be the same if the loan is made to the political committee rather than the candidate.[5] The statute defines "political committee" as "any person (except a candidate or an individual dealing with his or her own funds or property) having the expectation of receiving contributions or making expenditures in support of, or opposition to, any candidate or any ballot proposition." RCW 42.17.020(33).
In construing a statute, the courts use prefaces or legislative "statements of intent" as guides, even if such statements have no independent operative force. Hartman v. Wash. State Game Comm'n,85 Wn.2d 176, 532 P.2d 614 (1975). Initiative 134 included such a preface, which is codified as RCW 42.17.620:
 By limiting campaign contributions, the people intend to:
 (1) Ensure that individuals and interest groups have fair and equal opportunity to influence elective and governmental processes;
 (2) Reduce the influence of large organizational contributors; and
 (3) Restore public trust in governmental institutions and the electoral process.
Id. From this language, we deduce that the purpose of RCW 42.17.720 was to assure that the contribution limits of the statute could not be evaded by the simple device of loaning or guaranteeing a loan of money to a candidate rather than flatly contributing it. Suppose, for instance, that A loans money to B for B's political campaign. A may actually intend never to seek repayment of the loan, or at least to assume the risk that the loan will not be repaid. RCW 42.17.720 requires reporting of the loan as a contribution by A to B's campaign.
Similarly, if A loans money to B's campaign, with a guarantee of repayment by C, it is possible that A either (1) does not actually expect repayment of this loan or (2) is relying for repayment on C's guarantee rather than on the campaign. In the first case, the loan could be characterized as a disguised contribution from A; in the second case, the loan could be a disguised contribution from C. Thus, RCW 42.17.720
requires that the amount of the loan be reported as a contribution to the campaign from both A, the lender, and C, the guarantor.
Having established this basic rule, the statute recognizes the possibility that a campaign might be financed in part through a "true" loan which does not amount to a disguised contribution. Thus, in subsection (3) of RCW 42.17.720, the statute relaxes the contribution limits for loans made by commercial lending institutions, in the regular course of business, and on the same terms ordinarily available to members of the public.[6] Thus, if B obtains a loan from D Bank, a commercial lending institution, on the same terms D Bank would offer to the general public in the regular course of business[7], such a loan is treated, in effect, as a "true" financial obligation of B, and thus not subject to contribution limitations, because B has a legal obligation to repay the loan, just as any ordinary citizen obtaining a bank loan would have an obligation to repay it.
The same basic analysis would apply whether the candidate or the political committee is the borrower. If the loan is a bona fide commercial transaction, such that the lending institution expects full repayment on the same basis as other loans it makes to the public in the regular course of business, the specific identity of the borrower is not relevant.[8] The same would be true if the campaign committee is the borrower and the candidate personally is the guarantor of the loan. In such a case, again assuming all the conditions set forth in RCW42.17.720(3) are met, the lender would be looking for repayment either to the committee or the candidate. With full repayment due, such a loan would qualify for the exemption from contribution limitations.[9]
This analysis is also supported by RCW 42.17.640(7), which provides that "[f]or the purposes of RCW 42.17.640 through 42.17.790, a contribution to the authorized political committee of a candidate, or of a state official against whom recall charges have been filed, is considered to be a contribution to the candidate or state official." The general policy of the statute is to treat candidates and their political committees as alter egos, except where there is some clear basis for distinguishing them.
Thus, we concur with the analysis behind your 1996 Interpretation. To qualify for the exemption from contribution limitations, a loan must meet all the conditions set forth in RCW 42.17.720(3), may be made either to a candidate or to a committee, and may not be guaranteed by any party other than the candidate.
 2. If a candidate for public office has received a commercial loan for campaign purposes, or if the candidate's political committee has received such a loan guaranteed by the candidate, is repayment of such a loan from campaign contributions subject to the maximum allowed by RCW 42.17.125(3)?
Your second question also concerns the interpretation of Initiative 134. The initiative amended RCW 42.17.125, a pre-existing statute, to add the language underlined:
 Contributions received and reported in accordance with RCW 42.17.060 through 42.17.090 may only be transferred to the personal account of a candidate, or of a treasurer or other individual or expended for such individual's personal use under the following circumstances:
. . .
 (3) Repayment of loans made by the individual to political committees, which repayment shall be reported pursuant to RCW 42.17.090. However, contributions may not be used to reimburse a candidate for loans totaling more than three thousand dollars[10] made by the candidate to the candidate's own political committee or campaign.
Id. (Laws of 1993, ch. 2, 21).[11] Before the 1993 amendment, a candidate could be fully repaid for any loan made by the candidate, to the campaign, out of campaign contributions collected and reported pursuant to law. Since the enactment of Initiative 134, such a loan may be repaid only to the extent of three thousand dollars, or as subsequently adjusted for inflation.
Your question is whether this repayment limitation also applies to a commercial loan in which a political committee is the borrower but the candidate is the guarantor, or if the candidate, rather than the political committee, is the borrower. RCW 42.17.125(3) by its terms applies only to loans made by the candidate to the political committee. Again, we agree with the reasoning of the Public Disclosure Commission's 1996 Interpretation. If the candidate is either the borrower or the guarantor of a loan to the committee, the candidate gains the same benefit from reimbursement, and the statutory limitations logically apply.
As noted earlier, the purpose of Initiative 134 was to encourage campaigns to rely on numerous small contributions rather than a few large ones. Although state law cannot limit the amount a candidate contributes to his or her own campaign, because of Buckley v. Valeo, the initiative did seek to discourage candidates from "fronting" the campaign with their own personal funds in the hope of recovering these amounts later by seeking campaign contributions from others. To that end, RCW 42.17.125
provides that, beyond the $3000 or $3500 limitation, candidates who spend large amounts of their own funds on a campaign cannot expect to recover those funds from campaign contributions.
If a candidate personally borrows funds and then uses them for campaign purposes, two "loans" are actually happening: a loan from the bank or other financial source to the candidate, and a second loan from the candidate to the campaign. Paying off this second loan with campaign contributions directly benefits the candidate in the same manner, whether the source of the funds is a bank loan or the candidate's personal fortune. The candidate is discharged from the obligation to repay the bank loan (in whole or in part). Therefore, the Commission is correct in reading RCW 42.17.125(3) as limiting reimbursement of loans of this type.
The same basic analysis applies where the political committee is the borrower and the candidate is the guarantor of repayment. Again, the candidate by this device is placing his or her personal financial backing behind a loan obtained for campaign purposes. If this loan is repaid from campaign contributions, the candidate directly benefits, as it assures that the candidate will not be called upon to make good on the guarantee. This is especially true where, as might often be the case, the commercial lender as a practical matter is looking to the guarantor for repayment rather than to the nominal borrower, the political committee. Thus, the candidate's guarantee of a loan is an indirect form of a loan by the candidate to the campaign committee, and it is subject to the reimbursement limitations of RCW 42.17.125(3) to the same extent as a loan made directly by the candidate to the campaign.[12]
We trust the foregoing will be helpful to the Commission.
Very Truly Yours,
JAMES K. PHARRIS Senior Assistant Attorney General
JKP:pmd
[1] Your questions all concern an Interpretive Statement adopted by the Commission in 1996, Interpretation 96-02 (attached as Appendix A to this opinion). To make the questions clearer to the average reader, we have rephrased your questions to eliminate specific reference to the Interpretation.
[2] Another portion of the initiative, RCW 42.17.690, authorizes the Public Disclosure Commission to change these *monetary limitations to reflect inflation. The Commission has done so, and the current limitations are found in WAC 390-05. Although political parties and caucus committees are not subject to the specific limitations of RCW42.17.640(1), they are subject to separate limitations set forth in RCW42.17.640(3) and (4).
[3] This part of Buckley was reaffirmed in Colo. Republican Fed.Campaign Comm. v. Fed. Election Comm'n, 518 U.S. 604, 116 S. Ct. 2309,135 L. Ed.2d 795 (1996), in which the Court struck down an election regulation limiting the "independent expenditures" of political parties.
[4] Although the substance of this section dates from Initiative 134, it was somewhat modified and clarified by a 1995 amendment. Laws of 1995, ch. 397, 22.
[5] Our discussion does not include commercial loans received by a candidate for personal, business, or other non-political purposes. A candidate would not, of course, have to report such personal loans as contributions, although the candidate would have to account for any loan proceeds actually used for campaign purposes.
[6] Note that such loans are still reportable as contributions (RCW42.17.090(1)(c)), but are not subject to the contribution limits contained elsewhere in the statute.
[7] An obvious typical feature of such a loan is that the institution would in fact expect full repayment.
[8] We admit to some skepticism that commercial lending institutions would make loans in the regular course of business to political committees, which are typically temporary unincorporated associations with no significant assets and no income except campaign contributions. As discussed in our answer to your second question, campaign contributions are available for repayment of such loans only to a partial extent. However, the purpose of this analysis is to determine what is legally permissible rather than what is commercially practical.
[9] On the other hand, if any third party guarantees the loan, the possibility immediately arises that the commercial lender is looking to the guarantee rather than campaign for repayment. That would make the loan a disguised contribution by the guarantor and would subject it to the contribution limitations of RCW 42.17.640.
[10] Under the authority of RCW 42.17.690, the Public Disclosure Commission has raised this amount by rule to $3500. WAC 390-05.
[11] In 1995, the Legislature amended this language slightly, replacing the phrase "candidate's own authorized committee" with "candidate's own political committee". Laws of 1995, ch. 397, 29.
[12] The 1996 Interpretation includes a presumption that a loan obtained by a political committee is guaranteed by the candidate. It is beyond the scope of this opinion to consider what evidence might be sufficient to establish that a candidate in a particular case has not in fact guaranteed the loan.